2020 UT App 11

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MIKEL PRATT HAMILTON,
Appellant.

Opinion
No. 20180620-CA
Filed January 9, 2020

Third District Court, Salt Lake Department
The Honorable Linda M. Jones
No. 171907724

Phillip W. Dyer and Benjamin R. Dyer, Attorneys
for Appellant

Simarjit S. Gill and Tegan M. Troutner, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1     Mikel Pratt Hamilton appeals his conviction for obstruction of justice, arguing he cannot be convicted of that crime without also being convicted of at least one of the other charges against him: theft or possession or use of a controlled substance. We affirm.

BACKGROUND

¶2     Hamilton was the managing pharmacist for a pharmacy (Pharmacy) in Salt Lake City, Utah. Hamilton worked with another pharmacist (Pharmacist), and they alternated shifts so

one pharmacist was always on duty. Several pharmacy technicians also worked at Pharmacy and helped the pharmacist on duty process prescriptions.

¶3  Between January and April 2017, two pharmacy technicians noticed shortages of phentermine.[1] A technician (Technician One) testified at trial that phentermine is a controlled substance and that Pharmacy does not distribute it often. Technician One testified that in addition to noticing shortages of phentermine, she noticed loose pills of the drug on a shelf and reported the loose and missing pills to Pharmacist. In response, Pharmacist checked the on-hand amount of phentermine with the computer inventory and realized the numbers were drastically different.

¶4  Another technician (Technician Two) testified that he worked for Pharmacy from April 2016 to December 2017. Around April 2017, Technician Two also noticed shortages of phentermine. One day, Technician Two had to process a prescription of phentermine and realized there were not enough pills to fill the prescription. He told Pharmacist, who thought it was strange because Pharmacy had only one patient with a prescription for that specific dose of phentermine. Employees began monitoring the phentermine, and one day, Technician Two wrote down the amount of phentermine Pharmacy had on hand as his shift was ending. Technician Two returned the following morning and discovered there were fewer phentermine pills on hand than the number he wrote down the previous night. Hamilton was the only employee working

---

1. Phentermine is "a controlled substance" used "for a limited period of time to speed weight loss in overweight people who are exercising and eating a low-calorie diet." National Institute of Health, *Phentermine*, https://medlineplus.gov/druginfo/meds/a682187.html [https://perma.cc/HGL8-9X94].

between the time Technician Two left and when he returned the following day. Technician Two also noticed loose phentermine pills on the shelves and notified Pharmacist. Pharmacist reported these losses to Pharmacy's asset protection district manager (Asset Manager). By the end of the year, Technician Two and Pharmacist stopped working for Pharmacy.

¶5     After receiving the report of missing phentermine from Pharmacist, Asset Manager began an investigation. Asset Manager installed hidden video cameras in a vent above the area where phentermine was stored. The surveillance videos revealed Hamilton accessing phentermine after business hours on multiple occasions when "there was no legitimate reason for those medications to be accessed" because Hamilton was not filling prescriptions. One video showed Hamilton "removing medication from the bottle" and "putting it into his left hand as he walk[ed] off camera." In another video, Hamilton "le[ft] with multiple bottles of phentermine from the shelf" and "one of [the bottles] was not" returned to the shelf. On a different occasion, video footage showed Hamilton "doing something with bottles" and "ducking down." Asset Manager testified that "no prescriptions were filled" at the time this footage was recorded because Hamilton did not print out a label to mark a vial for a patient. As a result of the investigation, Asset Manager determined that Hamilton was accessing phentermine without a legitimate purpose, that he was editing the inventory of the pills on the computer system to account for the missing pills, and that no prescriptions were being filled during the times Hamilton accessed the phentermine.

¶6     Asset Manager scheduled an interview with Hamilton. As the two began speaking, Hamilton "stood up and asked [Asset Manager] if [Asset Manager] was accusing [Hamilton] of anything." Asset Manager explained he was not accusing Hamilton of anything but was just asking him questions. Hamilton demanded to review the video footage. Asset Manager

explained he would not show Hamilton the footage. Hamilton responded that he was resigning, and walked out.

¶7     In addition to his own investigation, Asset Manager contacted Pharmacy's district manager (District Manager), who oversees all of Pharmacy's Utah stores, to inform her about the missing phentermine. District Manager reported the losses to the state pharmacy board and the federal Drug Enforcement Administration (DEA) while Asset Manager was conducting the internal investigation. Hamilton was ultimately charged with theft, obstructing justice, and possession or use of a controlled substance.

¶8     District Manager testified at trial that pharmacists inventory controlled substances annually. She explained that "everything is tracked on a controlled substance" from the time it leaves the warehouse to the time it is dispensed to patients. If there is a discrepancy between the on-hand count and the computer count, pharmacists have the ability to reconcile it but, under Pharmacy policy, must report the discrepancy to Asset Manager and District Manager. District Manager also explained that, by law, the discrepancy must be reported to the DEA and the state pharmacy board. She testified that between January and April 2017, 291 phentermine pills were missing from Pharmacy, for a total loss of $610.69.

¶9     District Manager also testified about how she knew Hamilton was involved with the missing pills. She explained that Hamilton's computer credentials were used to adjust the phentermine inventory on the computer system to match the number of pills on hand after they were taken from the bottles. District Manager testified that during the time the phentermine pills were missing, Hamilton's computer credentials were the only ones used to adjust the inventory and that he never reported the discrepancies to District Manager or Asset Manager.

¶10    After trial, the jury found Hamilton guilty of obstruction of justice but not guilty of theft and not guilty of possession or use of a controlled substance. Hamilton filed a motion to arrest judgment, arguing that because "the State's theory and argument regarding the obstruction of justice charge [is] so inextricably intertwined with the charges upon which [Hamilton] was acquitted that the jury's verdict of guilty must necessarily be arrested with [Hamilton] acquitted on all charges." The district court denied the motion, concluding Hamilton need not be found guilty of either theft or possession or use of a controlled substance to be convicted of obstruction of justice. The court also found that sufficient evidence supported the obstruction of justice conviction in that Hamilton "was the [P]harmacy manager, . . . he knew about the crime in the [P]harmacy, there was evidence that he was messing with the pills, that he was handling the pills when there wasn't a prescription to be filled, and he would have had his own reasons for altering the records to prevent an investigation." It concluded that "stealing a controlled substance from a pharmacy constitutes a criminal offense" and that sufficient evidence supported the verdict that Hamilton "covered it up" to obstruct the investigation or prosecution of the missing pills.

ISSUE AND STANDARD OF REVIEW

¶11    On appeal, Hamilton essentially argues the district court erred in denying his motion to arrest judgment because the jury's verdict was inconsistent when it convicted him of obstruction of justice but acquitted him of the underlying charges of theft and possession or use of a controlled substance.[2]

---

2. Hamilton also argues the court erred in including "recklessly" in the mens rea requirement for the obstruction of justice jury instruction. On appeal, Hamilton contends "the mens rea

(continued…)

"We review inconsistency challenges to jury verdicts in the light most favorable to the verdict and will not overturn a jury's verdict of criminal conviction unless reasonable minds could not rationally have arrived at a verdict of guilty beyond a reasonable doubt based on the law and evidence presented." *State v. Peterson*, 2019 UT App 193, ¶ 22 (quotation simplified). Further, a

---

(…continued)
requirement in the obstruction statute is clear—the State must prove that Hamilton *intentionally* obstructed justice." We conclude this argument is unpreserved. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (holding that for an argument to be preserved for appeal, the appellant must have presented the argument "to the district court in such a way that the court has an opportunity to rule on it" (quotation simplified)). When discussing the jury instructions at trial, Hamilton stated he did not include "recklessly" in his proposed jury instructions for both theft and obstruction of justice because the information did not allege that Hamilton "acted recklessly." In response, the State explained why including "recklessly" was appropriate, to which Hamilton responded, "I'm just struggling with how you can recklessly do *these* things, your honor. That's fine." (Emphasis added.) These statements did not adequately preserve Hamilton's argument that obstruction of justice requires proof of intent, not merely recklessness. Hamilton did not make this argument to the court, nor did he support any arguments with "evidence and relevant legal authority." *Id.* (quotation simplified). But even if his argument was preserved, Hamilton invited any error by stipulating to the instruction. After the court clarified why it was including recklessness, it asked Hamilton if it resolved his confusion, and he replied, "It does, your honor." *See State v. Popp*, 2019 UT App 173, ¶ 23 ("Under the doctrine of invited error, an error is invited when counsel encourages the [district] court to make an erroneous ruling." (quotation simplified)).

"[district] court may arrest a jury verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element." *State v. Bowen*, 2019 UT App 163, ¶ 17, 451 P.3d 1050 (quotation simplified), *petition for cert. filed*, Nov. 12, 2019 (No. 20190943). "Accordingly we review the [district] court's decision to arrest judgment for correctness." *Id.* (quotation simplified).

ANALYSIS

¶12    Hamilton argues the district court erred in denying his motion to arrest judgment because the jury reached what he alleges was an inconsistent verdict. He contends the verdict was "inherently improbable" because the jury convicted him of obstructing justice but acquitted him of theft and of possession or use of a controlled substance.

¶13    "This court will not reverse a conviction on an inconsistent verdict challenge unless reasonable minds could not rationally have arrived at the verdict of guilty beyond a reasonable doubt based on the law and evidence presented." *State v. Peterson*, 2019 UT App 193, ¶ 24 (quotation simplified). As a result, "so long as sufficient evidence supports each of the guilty verdicts, state courts have generally upheld the convictions." *State v. LoPrinzi*, 2014 UT App 256, ¶ 30, 338 P.3d 253 (quotation simplified).

¶14    To convict a defendant of obstruction of justice, the jury must find that the defendant, "with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense," Utah Code Ann. § 76-8-306(1) (LexisNexis 2017), engaged in conduct including (1) "prevent[ing] by force, intimidation, or deception, any person from performing any act

that might aid in the discovery, apprehension, prosecution, conviction, or punishment of any person;" (2) "alter[ing], destroy[ing], conceal[ing], or remov[ing] any item or other thing;" (3) "mak[ing], present[ing], or us[ing] any item or thing known by the actor to be false;" or (4) "provid[ing] false information regarding a suspect, a witness, the conduct constituting an offense, or any other material aspect of the investigation," *id.* § 76-8-306(1)(b), (c), (d), (j).[3]

¶15   Hamilton argues the verdicts in this case were inconsistent because he was convicted of obstruction of justice but not of the underlying crimes with which he was charged, namely theft or possession or use of a controlled substance. But the obstruction of justice statute does not require a conviction of the underlying crime—it simply requires a finding that the defendant took certain actions "with [the] intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding *conduct that constitutes a criminal offense*." *Id.* § 76-8-306(1) (emphasis added). Nor does it require that a defendant cover up his own crime. The plain language of the statute articulates that the defendant can be convicted of obstructing justice when he intends to "hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of *any person*."[4] *Id.* (emphasis added).

---

3. The jury instructions in this case included additional examples provided in the obstruction of justice statute. For ease of reading, we reference only a few of the options the jury may have used to find Hamilton guilty of obstruction of justice.

4. Even if the jury did not believe Hamilton committed theft or possession or use of a controlled substance, it still could have found that Hamilton obstructed the investigation of someone else at Pharmacy stealing or unlawfully possessing phentermine. In fact, in closing argument at trial, Hamilton suggested that it

(continued…)

Therefore, the verdicts the jury reached in this case are not inconsistent because it could have found that Hamilton obstructed justice even if it concluded that he had not personally committed theft or possession or use of a controlled substance.

¶16 But regardless of whether the verdict was truly inconsistent, Hamilton is entitled to relief only if the evidence was insufficient to support his obstruction of justice conviction. *See LoPrinzi*, 2014 UT App 256, ¶ 30 (holding that "so long as sufficient evidence supports each of the guilty verdicts, state courts generally have upheld the convictions" after an inconsistency challenge (quotation simplified)). Hamilton's acquittal on the charges of theft and possession or use of a controlled substance does not necessarily mean the jury found that the State failed to meet its burden of proof for those crimes. "It is equally possible that the jury, convinced of guilt, properly reached its conclusion and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the other offense[s]." *Id.* (quotation simplified). "Because appellate courts have always resisted inquiring into the jury's thought processes and deliberations," we focus our inquiry on whether sufficient evidence supports Hamilton's obstruction of justice conviction. *State v. Cady*, 2018 UT App 8, ¶ 32, 414 P.3d 974 (quotation simplified).

¶17 We conclude sufficient evidence exists in this case to support the jury's verdict. First, the jury could have found that Hamilton intentionally "hinder[ed], delay[ed], or prevent[ed] the investigation, apprehension, prosecution, conviction, or punishment of any person regarding" the theft or possession or use of a controlled substance, Utah Code Ann. § 76-8-306(1),

_____

(…continued)

was someone else at Pharmacy who stole or possessed the phentermine.

when he used his computer credentials to change the phentermine inventory after business hours with no legitimate reason for him to access the phentermine. The jury also could have found that this conduct amounted to "alter[ing], destroy[ing], conceal[ing], or remov[ing] any item or other thing" or any of the other acts that constitute obstruction of justice. *See supra* ¶ 14; *see also* Utah Code Ann. § 76-8-306(1)(a)–(j). Because Hamilton manually altered the inventory of phentermine to account for the missing pills, the jury could have found that he did this to prevent the investigation of the offense of theft or possession or use of phentermine. Nothing in the record indicates that "reasonable minds could not rationally have arrived at a verdict of guilty beyond a reasonable doubt." *Peterson*, 2019 UT App 193, ¶ 22 (quotation simplified).

CONCLUSION

¶18 Hamilton's acquittal of theft and of possession or use of a controlled substance does not undermine his obstruction of justice conviction. Because there was sufficient evidence to support his conviction, the district court did not err in denying Hamilton's motion to arrest judgment. Affirmed.

_____