*This opinion is subject to revision before final
Publication in the Pacific Recorder*

**2024 UT 2**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent*,

*v.*

ELBERT JOHN PAULE,
*Petitioner*.

No. 20220039
Heard: March 6, 2023
Filed February 1, 2024

On Certiorari to the Utah Court of Appeals

Fourth District, Provo
The Honorable Lynn W. Davis
No. 191400658

Attorneys:

Sean D. Reyes, Att'y Gen., David A. Simpson, Asst. Solic. Gen.,
Salt Lake City, for respondent

Douglas J. Thompson, Jennifer L. Foresta, Provo, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, JUSTICE HAGEN,
and JUSTICE POHLMAN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Elbert Paule argued over the phone with his friend (Friend). As the argument escaladed, Friend said he intended to go to Paule's apartment to "take him out." Friend also said that if he did go to Paule's apartment, things would not end well for Paule. Although Paule told Friend not to come to his apartment, Friend came anyway.

¶2 When Friend arrived at Paule's apartment and tried to open the door, Paule retrieved and loaded his shotgun. Friend then used the

door code to open the apartment door, at which time Paule shot and killed Friend. Paule ran from his apartment to another friend's house and soon thereafter traveled by shuttle bus to Las Vegas and then to San Diego, where his grandmother lives.

¶3 The State charged Paule with murder, obstruction of justice, reckless endangerment, and assault, and he underwent a jury trial. The jury acquitted him on all charges except obstruction of justice.

¶4 Paule moved to arrest the judgment on the ground that the obstruction of justice conviction was legally inconsistent with the jury's determination that he was not guilty of the other charged crimes.[1] The trial court denied Paule's motion.

¶5 Paule appealed his conviction to the court of appeals, arguing that the trial court erred in denying his motion to arrest judgment and that his counsel rendered ineffective assistance. The court of appeals affirmed Paule's conviction, and we granted certiorari to review two of the court of appeals' determinations: (1) that Paule's conviction for obstruction of justice was not legally inconsistent with his acquittal on the other charges, and (2) that Paule could not demonstrate his trial counsel was ineffective in failing to seek a more detailed unanimity jury instruction. We affirm.

## Background

¶6 Paule and Friend knew each other for a few months, during which time they hung out and played video games together. Their friendship began to deteriorate when another of Paule's friends rebuffed Friend's romantic advances and Paule intervened.

¶7 On the day of Friend's death, Paule and Friend argued over the phone. Friend told Paule he planned to come to Paule's apartment to "take him out." Paule responded to Friend, "Do not come over." Fearing that Friend would come to his apartment, Paule and one of

---

[1] An "arrest of judgment" means "[t]he staying of a judgment after its entry; esp., a court's refusal to render or enforce a judgment because of a defect apparent from the record." *Arrest of judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019). At any time before sentencing, a district court may, *sua sponte* or upon motion of a defendant, "arrest judgment if the facts proved or admitted do not constitute a public offense, . . . or there is other good cause for the arrest of judgment." UTAH R. CRIM. P. 23.

his roommates established a special knock to identify who was at the apartment door.

¶8 Friend came to Paule's apartment, bringing along Friend's fiancée and infant child. Upon arriving at Paule's apartment, Friend knocked on the door. Recognizing that the knock was not the identifiable one he and his roommate had established, Paule did not answer. Instead, he waited and hoped whoever was at the door would leave. When the person at the door had not left after five minutes, Paule went to his bedroom, retrieved his shotgun, loaded it, and returned to the apartment entryway—standing four or five feet from the door. According to Paule's testimony, Friend—using the code to Paule's apartment door, which was saved on his phone—opened the door holding a knife, the two made eye contact, Friend stepped into the doorway, and Paule fired the shotgun at Friend.

¶9 At that point, one of Paule's roommates came out of his bedroom to see what had happened. Paule ran from his apartment, crossed the property, and jumped over a fence. He went to a friend's house, then left Utah on a shuttle bus, traveling first to Las Vegas and then to San Diego. After Paule shot Friend, but before law enforcement officers arrived at the scene, the shotgun Paule used to shoot Friend ended up in the grass below Paule's apartment balcony. In addition, sometime after Paule left his apartment, his phone went missing and was never found.

¶10 Eventually, Paule turned himself in to law enforcement. The State charged him with four crimes—(1) murder, a first-degree felony; (2) obstruction of justice; a second-degree felony (due to the first-degree felony nature of the murder charge); (3) reckless endangerment, a class-A misdemeanor; and (4) assault, a class-B misdemeanor—and the case went to trial.

¶11 In the State's opening statement, it identified the obstruction of justice charge as follows: "Number two is obstruction of justice, when, after he shot [Friend], he took that shotgun [and] threw it off the balcony in order to hinder, delay, or prevent the investigation." At trial, competing evidence was presented. Paule testified that he shot Friend in self-defense. He stated that immediately after he shot Friend, his roommate took the shotgun from him. Paule further testified that he believed his phone had accidentally dropped out of his pocket when he jumped over the fence near his apartment complex. And, when asked why he left Utah and went to California, he testified that he had wanted to explain to his family what had happened.

¶12 The responding and investigating officers also testified at trial. The officer who arrived at the apartment immediately after the shooting testified that he found a knife just outside the apartment door and a spent shotgun shell inside the apartment. Another officer testified that he found the shotgun—loaded and ready to fire with the same brand of shell as the empty shell found in Paule's apartment—in the grass below Paule's apartment balcony. Forensic evidence established that the five identifiable prints on the shotgun (four fingerprints and one palmprint) all matched Paule.

¶13 Paule moved for a directed verdict on the obstruction of justice charge. Outside the jury's presence, his counsel argued that no evidence showed that Paule had obstructed justice, explaining that although the shotgun was found in the grass outside, there was no evidence that Paule was the one who threw or dropped it from the balcony. In response, the State argued there was enough circumstantial evidence for a reasonable jury to conclude that Paule had obstructed justice by throwing the shotgun from the balcony. The court agreed with the State and determined that the jurors could "make their conclusion as it relates ultimately to [whether] they believe that . . . [Paule] discarded the shotgun and attempted to obstruct justice." Accordingly, the court denied Paule's motion for a directed verdict.

¶14 In its closing argument, the State maintained that Paule committed obstruction of justice by throwing the shotgun from the balcony, saying:

> Count 2 is obstruction of justice. That is when [Paule] threw the gun over the balcony. The statute says that . . . we'd have to show that . . . Paule did [this] with intent to hinder, delay or prevent the investigation, apprehension, prosecution, conviction or punishment of any person regarding conduct that constituted a criminal offense and did alter, destroy, conceal or remove any item or thing. Now, again, he threw that shotgun over and only his prints are on that. That would be consistent with him shooting the shot, going and throwing it over the balcony and then coming out a short time later to get away.

¶15 The parties stipulated to the jury instructions. Regarding the obstruction of justice charge, the jury was instructed that it could not convict Paule unless it found, beyond a reasonable doubt, that Paule had "alter[ed], destroy[ed], conceal[ed] or remove[d] any item or thing" with the "intent to hinder, delay, or prevent the investigation,

apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." The jury was also instructed that in all criminal cases, including Paule's case, a verdict must be reached by the unanimous agreement of all the jurors.

¶16 The jury convicted Paule of obstruction of justice but acquitted him on all the other charges. Paule moved the trial court to arrest the lone conviction, arguing that it was legally inconsistent with the jury's determination that he was not guilty of the other crimes. He asserted that if the jury determined he did not engage in conduct that constitutes a crime, it could not find him guilty under the elements of obstruction of justice. The court heard the parties' arguments on the motion and denied it.

¶17 Paule appealed his conviction to the court of appeals, arguing that the trial court erred in denying his motion to arrest judgment and that his counsel rendered ineffective assistance. The court of appeals first reviewed Paule's argument that his conviction should be vacated under the theory that the obstruction conviction was legally inconsistent with the acquittals on the other charges. It examined the language and legislative history of the obstruction of justice statute,[2] specifically noting that "the legislature added 'investigation' to the list of things that an actor cannot hinder, delay, or prevent without potentially committing obstruction of justice."[3]

¶18 The court also highlighted that the legislature removed the phrase "for the commission of a crime" from the statute—replacing it with the phrase "regarding conduct that constitutes a criminal offense" and adding a definition of "conduct that constitutes a criminal offense."[4] The court reasoned that these changes indicated the legislature's intent that under the obstruction of justice statute, a person can be convicted of obstruction of justice "even if the underlying conduct is never ultimately found to constitute a crime."[5] So, the court continued, to obtain a conviction for obstruction of justice in Paule's case, the State needed to prove, beyond a reasonable doubt, three elements: that Paule "(1) concealed or removed the shotgun

---

[2] *See* UTAH CODE § 76-8-306.

[3] *State v. Paule*, 2021 UT App 120, ¶ 19, 502 P.3d 1217.

[4] *Id.*

[5] *Id.* ¶ 20.

(2) with the intent to hinder, delay, or prevent an investigation (3) into conduct that *would be* punishable as a crime."[6]

¶19 The court of appeals rejected Paule's argument that the reasoning in *Pleasant Grove City v. Terry*[7] renders his verdict legally impossible,[8] explaining that none of the other charges on which Paule was acquitted are predicate offenses of obstruction of justice.[9] The court pointed to its decision in *State v. Hamilton*,[10] in which it held that a person can be convicted of obstruction of justice without also being convicted of *any* underlying crime.[11] The court emphasized the legislature's decision to define "conduct that constitutes a criminal offense" as "conduct that would be punishable as a crime," and explained that "the statutory focus is squarely placed on the conduct being investigated at the time of the alleged obstruction, and not necessarily on any conduct that a factfinder ultimately finds, after trial, to have actually occurred."[12] In the court's eyes, "the conduct that matter[ed] for purposes of the obstruction count is twofold: (a) the actions Paule took that allegedly constitute obstruction, and (b) the underlying conduct being investigated at the time of the alleged obstruction."[13] The court interpreted the key statutory language in Utah Code subsection 76-8-306(2)(a), "conduct that constitutes a criminal offense," to mean "conduct that would be punishable as a crime if the facts had developed as suspected."[14] So the court determined that, in Paule's case, the jury's verdict was not legally impossible.

¶20 Paule also argued to the court of appeals that his counsel was ineffective. His primary argument was that his counsel was ineffective for failing to object to the absence of a specific instruction regarding

---

[6] *Id.* ¶ 21 (cleaned up).

[7] 2020 UT 69, 478 P.3d 1026.

[8] Utah courts have used the phrases "legally inconsistent" and legally impossible" interchangeably. We do so as well.

[9] *Paule*, 2021 UT App 120, ¶¶ 22–24.

[10] 2020 UT App 11, 457 P.3d 447.

[11] *Id.* ¶¶ 1, 15–18.

[12] *Paule*, 2021 UT App 120, ¶ 26.

[13] *Id.* ¶ 27.

[14] *Id.* ¶ 30 (cleaned up).

jury unanimity in relation to the obstruction of justice charge.[15] According to him, the jury members could have been divided in their opinions as to which of Paule's actions constituted obstruction—his discarding of the shotgun, his disposing of his phone, or his fleeing to California.[16]

¶21 The court disagreed with Paule, explaining that the only act alleged at trial for the obstruction charge was Paule's throwing the shotgun off the balcony.[17] The court pointed to various portions of the record to show that the focus of the obstruction charge was Paule's disposal of the shotgun—not the other actions mentioned.[18] It determined that although the State presented evidence of his disposing of his phone and fleeing to California at trial, the State mentioned those actions only in connection with the murder charge, not the obstruction of justice charge.[19] The court concluded that the State "clearly identified for the jury which factual circumstance formed the basis for its obstruction of justice charge," and, consequently, Paule's counsel was not ineffective in failing to object to the absence of a specific instruction regarding jury unanimity.[20]

¶22 The court also ruled on Paule's claim that his counsel provided ineffective assistance in failing to request either "an additional instruction that might have further defined the phrase 'conduct that constitutes a criminal offense'" or "some unspecified mechanism—perhaps a special verdict form—that would have allowed the jurors to 'inform the court which *conduct that constitutes a criminal offense* they determined beyond a reasonable doubt Paule acted to obstruct.'"[21] In a footnote, the court rejected this ancillary claim, giving two alternative justifications for its decision. First, "to the extent that Paule's argument intend[ed] to incorporate" his statutory interpretation argument, the court rejected his ineffective assistance of counsel claim for the same reasons outlined above.[22]

---

[15] *Id.* ¶¶ 37, 40.

[16] *Id.* ¶ 37.

[17] *Id.* ¶ 45.

[18] *Id.*

[19] *Id.* ¶ 46.

[20] *Id.* ¶ 48.

[21] *Id.* ¶ 36 n.3.

[22] *Id.*

Second, and alternatively, it determined Paule had not convinced the court of "a reasonable likelihood of a different result" even if his counsel had asked for an additional jury instruction or a special verdict form.[23]

¶23 Because the court of appeals determined that the district court did not err in denying Paule's motion to arrest judgment and that Paule had not shown that his counsel was ineffective, it affirmed Paule's conviction.[24]

¶24 Paule requested that we review two aspects of the court of appeals' decision: (1) its interpretation of the obstruction statute and the doctrine of legally impossible verdicts, and (2) its conclusion that a jury is adequately instructed about unanimity if the State identifies the theory supporting its case in its opening statement or closing argument. We granted certiorari and agreed to review two issues: (1) whether the court of appeals erred in concluding Paule's conviction for obstruction was not legally impossible in light of his acquittal on the other charges, and (2) whether the court of appeals erred in concluding Paule did not demonstrate that his counsel was ineffective in failing to seek a more detailed unanimity instruction.

**Standard of Review**

¶25 On certiorari, we review court of appeals decisions for correctness, giving no deference to the court of appeals' conclusions of law.[25] Whether Paule's obstruction of justice conviction is legally impossible presents a question of law.[26]

¶26 When confronted with an ineffective assistance of counsel claim, "we review the court of appeals' decision for correctness."[27]

**Analysis**

¶27 Paule asks us to reverse his obstruction of justice conviction, arguing that the court of appeals improperly interpreted the

---

[23] *Id.*

[24] *Id.* ¶ 49.

[25] *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650.

[26] *See Pleasant Grove City v. Terry*, 2020 UT 69, ¶ 7, 478 P.3d 1026 (addressing "the appropriate standard of review for a legally impossible verdict" and holding that the issue presents "a question of law, which we review for correctness").

[27] *State v. McNeil*, 2016 UT 3, ¶ 14, 365 P.3d 699.

obstruction of justice statute and misapplied the doctrine of inconsistent verdicts laid out in *Pleasant Grove City v. Terry*.[28] He also argues that the court of appeals erred in holding that his counsel was not ineffective.

¶28 We reject Paule's arguments and hold that (1) to be convicted of obstruction of justice, a defendant need only perform an obstructive act with the requisite intent—proof of a separate crime is not necessary—and (2) Paule has not shown that he received ineffective assistance of counsel. Accordingly, we affirm Paule's conviction.

I. The Court of Appeals Was Correct in Upholding the Jury's Verdict that Paule Violated the Obstruction of Justice Statute

¶29 Most crimes require a certain *actus reus* and *mens rea*.[29] *Actus reus* refers to the "physical components of a crime," which include "[t]he voluntary act or omission" and "the attendant circumstances" of a crime.[30] *Mens rea* refers to the state of mind a defendant must have had when committing that crime.[31] The *mens rea* of a crime may require either general or specific intent. To be convicted of a specific intent crime, the defendant must have acted with the intent to cause a specific result rather than simply the intent to perform the act.[32] "[A] defendant's intent can be inferred from conduct and attendant circumstances in the light of human behavior and experience."[33] Obstruction of justice "is a crime of specific intent."[34]

¶30 In Utah Code subsection 76-8-306(1), Utah's obstruction of justice statute states, in relevant part, "[a]n actor commits obstruction of justice if the actor, with intent to hinder, delay, or prevent the

---

[28] 2020 UT 69, 478 P.3d 1026.

[29] *See Actus reus*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[30] *Id.*

[31] *See Mens rea*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining *mens rea* as the "state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime").

[32] *See State v. Hutchings*, 2012 UT 50, ¶ 14 n.3, 285 P.3d 1183 (explaining the difference between specific- and general-intent crimes).

[33] *State v. Carrell*, 2018 UT App 21, ¶ 57, 414 P.3d 1030 (cleaned up).

[34] *State v. Maughan*, 2013 UT 37, ¶ 13, 305 P.3d 1058.

investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense: . . . alters, destroys, conceals, or removes any item or other thing."

¶31 Thus, the *actus reus* of Utah's obstruction of justice statute is "alter[ing], destroy[ing], conceal[ing], or remov[ing] any item or other thing."[35] And the *mens rea* portion of the statute requires the "intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense."[36]

¶32 Paule and the State do not dispute the *actus reus* of the statute. But they disagree about the *mens rea* required for obstruction of justice. Specifically, they disagree as to whether the language "conduct that constitutes a criminal offense" requires the State to prove that the conduct at issue could ultimately be proven to be a separate crime.

¶33 Paule contends that the "conduct" described in the statute must be independently criminal. He argues that the State must prove that Paule satisfied all the elements of the crime related to the criminal conduct, including the *mens rea*. Accordingly, acquittal on a criminal charge—in this case, murder— that is related to the criminal conduct—in this case, shooting Friend—would necessarily preclude an obstruction of justice charge because, ultimately, the State could not prove that the underlying conduct was independently criminal.

¶34 The State disagrees, arguing that it need only prove that Paule thought his conduct was criminal. Obstruction of justice, the State contends, is much like a conspiracy crime, in which the State need only prove that the defendant *intended* that a crime be committed; the crime need not materialize. Therefore, acquittal on all other criminal charges would not affect an obstruction of justice conviction because that conviction does not turn on whether the underlying criminal conduct results in a separate punishable crime.

¶35 We agree with the State and conclude that because a violation of Utah's obstruction of justice statute requires only that a defendant act with the requisite intent—it does not require proof of a separate criminal offense—the jury's verdict was not legally impossible.

---

[35] *Id.*

[36] *Id.*

### A. The Court of Appeals Did Not Err in Holding that Paule's Obstruction of Justice Conviction Was Not Legally Impossible

¶36 "Legally impossible verdicts are verdicts that are inconsistent as a matter of law because it is impossible to reconcile the different determinations that the jury would have had [to] make to render them."[37] We addressed legally impossible verdicts for the first time in *Terry*.[38] In that case, the defendant, Terry, was charged with, among other crimes, domestic violence and commission of domestic violence in the presence of a child.[39] The jury returned a verdict that acquitted Terry on domestic violence but convicted him of domestic violence in the presence of a child.[40]

¶37 On appeal of that conviction, we addressed whether it is legally possible to acquit a defendant on a predicate offense but convict them of the compound offense.[41] A predicate offense is a "crime that is composed of some, but not all, of the elements of a more serious crime and that is necessarily committed in carrying out the greater crime."[42] A compound offense is an "offense composed of one or more separate offenses."[43]

¶38 Acquitting a defendant on a predicate offense that constitutes at least one "essential element" of the compound offense but convicting the defendant on the compound offense is illogical because the jury has already concluded that the prosecution did not establish that element of the compound offense.[44] Accordingly, we ultimately held in *Terry* that when a defendant is "acquitted on the predicate offense but convicted on the compound offense," such that "without the underlying offense the compound charge cannot stand," then the verdict is legally impossible and the reviewing court must overturn

---

[37] *Terry*, 2020 UT 69, ¶ 13 (cleaned up).

[38] *See generally id.*

[39] *Id.* ¶ 4.

[40] *Id.*

[41] *Id.* ¶ 12.

[42] *Offense*, BLACK'S LAW DICTIONARY (11th ed. 2019) (equating lesser included offense with predicate offense).

[43] *Id.*

[44] *See Terry*, 2020 UT 69, ¶¶ 15–16.

it.[45] We instructed that, in making its determination, a reviewing court "should look into the elements of the crime, the jury verdicts, and the case's instructions."[46]

¶39 Paule argues that the court of appeals erred both in its interpretation of the obstruction of justice statute and in its analysis of the jury instructions. First, Paule argues that legally impossible verdicts are not confined to predicate/compound offenses and that an obstruction of justice conviction after acquittal on all other criminal charges is legally impossible because the *mens rea* element of the Utah obstruction of justice statute requires that the State prove that the defendant's conduct is criminal. Therefore, if the defendant is acquitted on the criminal charge related to the criminal conduct, the State cannot prove that the defendant's conduct was criminal.

¶40 Second, Paule contends that the court inappropriately applied the *Terry* factors, principally by considering the additional context of the language in subsection 76-8-306(2)(a) that was not given to the jury when interpreting the obstruction of justice statute. Paule thus argues the court improperly analyzed the "case's instructions."[47]

¶41 The State responds that because murder, assault, and reckless endangerment are not "predicate" or "lesser included" offenses of obstruction of justice, the jury's verdict is not legally impossible. It contends that because "a jury could also rationally conclude that Paule subjectively believed he was legally at risk of a murder conviction—and thus acted 'with intent to hinder' a murder investigation"—his verdict of obstruction of justice is legally consistent. In other words, the State reiterates that *intent* to hinder an investigation is what matters and argues that a reasonable jury could find Paule guilty of obstruction of justice.

¶42 Turning to Paule's argument that the court of appeals violated *Terry* by considering language outside of the instructions given to the jury, the State argues that any error the court committed in this regard was immaterial. Even without the additional context of subsection 76-8-306(2)(a), the State argues, the plain language of subsection 76-8-306(1) indicates that the jury could have convicted Paule of obstruction of justice despite acquitting him on all other charges.

---

[45] *Id.* ¶ 53 (cleaned up).

[46] *Id.*

[47] *Id.*

¶43 Thus, the State argues that the court of appeals did not err in holding that the jury's verdict was not legally impossible. We agree with the State that the jury's verdict was not legally impossible.

¶44 Determining whether the court of appeals erred in holding that Paule's conviction was not legally impossible requires that we first identify the elements of obstruction of justice under subsection 76-8-306(1).[48] As explained above, the obstruction of justice statute is divided into *mens rea* and *actus reus* elements. Because the *mens rea* element is the only disputed portion here, it is our focal point.

¶45 The relevant portion of subsection 76-8-306(1) states that a defendant must act "with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." Read in a vacuum, this language could be interpreted to mean either—as Paule argues—that the conduct at issue must ultimately be punishable as a separate crime, or—as the State argues—that the defendant's intent to impede a criminal investigation is all that matters, and the State need not prove that the conduct constituted a separate, punishable criminal offense.

¶46 Though we have not analyzed this statutory language in depth, our court of appeals recently provided some insight into its meaning. In *State v. Mendoza*, the court explained that "to find a person guilty of obstruction of justice, a jury must determine that the person has done two things: (1) acted with the appropriate intent as described in section 76-8-306(1) and (2) committed any one of the specific acts listed in section 76-8-306(1)(a)–(j)."[49] Neither of the two statutory elements of obstruction of justice discussed in *Mendoza* requires that a jury conclude that a separate crime has been committed.

¶47 As the *Mendoza* court noted, the language of the statute does not expressly require the State to prove that the defendant committed a separate crime. Therefore, "conduct that constitutes a criminal offense" must mean something other than what Paule argues—that the State must prove that the conduct at issue satisfies both the *actus reus* and the *mens rea* of a separate crime. We interpret the phrase as

---

[48] *See id.* (requiring a reviewing court to "look into the elements of the crime, the jury verdicts, and the case's instructions" when determining whether verdicts are legally impossible).

[49] 2021 UT App 79, ¶ 15, 496 P.3d 275.

instead meaning conduct that the defendant *believes* constitutes the *actus reus* of a crime.

¶48 This interpretation becomes apparent when we consider the statute as a whole, as our caselaw directs. The primary goal of statutory interpretation is "to ascertain the intent of the legislature."[50] In doing so, we look at the plain language of the statute, "[b]ut we do not interpret statutory provisions in isolation."[51] We consider the statute as a whole, including the current language in the context of any relevant amendments.[52]

¶49 Here, we cannot read subsection 76-8-306(1) without the context of subsection 76-8-306(2), which defines "conduct that constitutes a criminal offense" as "conduct that would be punishable as a crime and is separate from a violation of this section."[53] As the court of appeals noted, before 2001, the statute defined the *mens rea* of obstruction of justice as "intent to hinder, prevent, or delay the discovery, apprehension, prosecution, conviction, or punishment of another *for the commission of a crime*."[54] In 2001, the legislature amended the statute to replace "for the commission of a crime" with "regarding conduct that constitutes a criminal offense."[55] It also defined "conduct that constitutes a criminal offense" as "conduct that *would be* punishable as a crime and is separate from a violation of this section."[56] In changing the language to "conduct that constitutes a criminal offense" and defining that conduct with the conditional "would be," the legislature manifested a clear intent to amend the obstruction of justice *mens rea* requirement to no longer require that the State prove that the conduct in question ultimately resulted in a separately punishable crime. That is, the legislature intended that a defendant could be convicted of an obstruction of justice charge even

---

[50] *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (cleaned up).

[51] *Hertzske v. Snyder*, 2017 UT 4, ¶ 12, 390 P.3d 307 (cleaned up).

[52] *See Gressman v. State*, 2013 UT 63, ¶¶ 30–32, 323 P.3d 998.

[53] UTAH CODE § 76-8-306(2)(a).

[54] *State v. Paule*, 2021 UT App 120, ¶ 18, 502 P.3d 1217 (quoting UTAH CODE § 76-8-306(1)(f) (2000)).

[55] *See id.* ¶ 19 (comparing UTAH CODE § 76-8-306(1), with Act of Apr. 30, 2001, ch. 307, § 2, 2001 Utah Laws 1385, 1385–86).

[56] *See id.* (quoting Act of Apr. 30, 2001, ch. 307, § 2, 2001 Utah Laws 1385, 1386).

if they have not been convicted of any crime linked to the underlying conduct.

¶50 Therefore, "conduct that constitutes a criminal offense" does not refer to conduct that constitutes both the *actus reus* and the *mens rea* of the separate crime; if a defendant's underlying conduct satisfied both elements, that conduct would be punishable as a separate criminal offense. And as we have noted, the legislature did not intend to require that the State prove a separate criminal offense in proving obstruction of justice.

¶51 The plain language of the statute points to "conduct" as meaning the *actus reus* of a crime. Conduct means "a mode or standard of personal behavior"[57] or "the manner in which a person behaves."[58] The definition does not refer to the mental state motivating a behavior; it focuses only on the behavior itself. That focus echoes the meaning of *actus reus*, which is defined as the physical act of a criminal offense.[59] So "conduct that constitutes a criminal offense" refers only to the *actus reus* of a criminal offense.

¶52 But the State need not prove that the underlying conduct was in fact the *actus reus* of a criminal offense. Remember that "conduct that constitutes a criminal offense" is found within the *mens rea* requirement of the obstruction of justice statute.[60] And *mens rea* refers to the mental state, fault, or culpability of a defendant.[61]

¶53 So the *mens rea* element of the obstruction of justice statute focuses on the defendant's mental state. Whether the defendant's—or any other person's—conduct was actually the *actus reus* of a criminal offense has no bearing on the defendant's intent to obstruct justice. Instead, because it is the only factor that can affect the defendant's culpability, the defendant's subjective belief that the underlying conduct constituted the *actus reus* of a separate criminal offense is the

---

[57] *Conduct*, MERRIAM WEBSTER https://www.merriam-webster.com/dictionary/conduct (last visited Jan. 12, 2024).

[58] *Conduct*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[59] *Actus reus*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[60] *See* UTAH CODE § 76-8-306(1).

[61] 1 Wayne R. LaFave, *Mental States, Generally* in Substantive Crim. L. § 5.1 (3d ed. 2023).

determining factor of the defendant's intent to "hinder, delay, or prevent [an] investigation."[62]

¶54 This analysis comports with general principles of criminal law. A foundational concept of criminal law is that only people who have done something wrong and are culpable for that wrong act should be punished.[63] In other words, "it is unjust to blame and punish anyone who does not deserve to be punished."[64] Guilt is determined by culpability. And culpability is determined by the mental state of the defendant.

¶55 In sum, when an obstruction of justice charge is predicated on the obstruction of an investigation, we conclude that the *mens rea* for that crime requires that a defendant have the specific intent to hinder an investigation into what the defendant believes is the *actus reus* of a separate crime. Whether the defendant, or any other person, had the *mens rea* to commit that separate crime is irrelevant.

¶56 The court of appeals' interpretation overlaps with ours in that the court of appeals agreed that the State need not prove a separate crime to support an obstruction of justice charge.[65] But the court's interpretation diverges from ours with respect to what the State *does* need to prove.[66] The court added its own gloss to the legislature's definition of "conduct that constitutes a criminal offense," defining the phrase as "conduct that would be punishable as a crime *if the facts had developed as suspected*" by the police.[67] The statute, the court reasoned, focuses on the conduct the police suspected, not the conduct

---

[62] UTAH CODE § 76-8-306(1).

[63] *See Mens rea*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining *mens rea* as the second essential element, along with *actus reus*, of a crime); Paul H. Robinson, *Mens Rea*, ENCYCLOPEDIA OF CRIME & JUST. 995, 995–96 (Joshua Dressler ed., 2d ed. 2002), *available at* https://scholarship.law.upenn.edu/faculty_scholarship/34/ (defining *mens rea*, in a broad sense, as "those conditions that make a person's violation sufficiently blameworthy to merit the condemnation of criminal conviction").

[64] Stephen J. Morse, *Inevitable Mens Rea*, 27 HARV. J.L. & PUB. POL'Y 51, 61 (2003).

[65] *Paule*, 2021 UT App 120, ¶ 27.

[66] *See id.* ¶ 30.

[67] *Id.* (emphasis added) (citing UTAH CODE § 76-8-306(1), (2)(a)).

that is proven at trial. So the police's suspicion controls whether the underlying conduct is "conduct that constitutes a criminal offense," and the State need only prove that the police suspected criminal conduct.[68] We disagree.

¶57 While presumably the police would not investigate conduct they do not believe to be criminal, the police's belief as to the criminality of the underlying conduct is not relevant to a defendant's mental state. And as explained above, the only belief that matters regarding "conduct that constitutes a criminal offense" is the defendant's belief. By construing "conduct that constitutes a criminal offense" to mean "conduct that would be punishable as a crime if the facts had developed as suspected,"[69] the court of appeals inappropriately shifted the focus from what the defendant believed to what the police suspected. The statute does not require a jury to consider what the police may have believed during the investigation; instead, the defendant's intent and subsequent actions are controlling.

¶58 In short, as relevant here, obstruction of justice has two elements: (1) the *actus reus* of "alter[ing], destroy[ing], conceal[ing], or remov[ing] any item or other thing"; and (2) the *mens rea* of the intent to "hinder, delay, or prevent the investigation . . . of any person regarding conduct" that the defendant believed constitutes the *actus reus* of a separate criminal offense.[70]

### B. The Court of Appeals Erred in Not Considering the Exact Language of the Jury Instructions, but the Error Was Harmless

¶59 The court of appeals was correct in holding that Paule's conviction was not legally impossible after Paule was acquitted on all other charges. As explained above, the fact that the criminal conduct did not result in a separately punishable crime does not preclude a conviction for obstruction of justice. The court did, however, err in one respect: it failed to separately consider the case's instructions, as required under *Terry.*[71] Specifically, the court erred when it analyzed language of the obstruction of justice statute that was not included in the jury instructions.[72] The court could only consider language

---

[68] *Id.*

[69] *Id.* (cleaned up).

[70] *See* UTAH CODE § 76-8-306(1).

[71] *See Terry*, 2020 UT 69, ¶ 53.

[72] *See Paule*, 2021 UT App 120, ¶¶ 25–30.

outside the jury instructions when engaging in the first prong of the *Terry* test: determining the elements of obstruction of justice. Despite this error, we conclude that the jury could still have reasonably come to its verdicts such that the verdicts were not irreconcilable.

¶60 Among other instructions, the jury was given the following directive at trial:

> The defendant is charged in Count 2 with Obstruction of Justice. You cannot convict him of this offense unless you find beyond a reasonable doubt, based on the evidence, each of the following elements: (1) the defendant, Elbert John Paule, did; (2) with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense; (3) alter, destroy, conceal, or remove any item or other thing.

This instruction quotes the relevant language of Utah Code subsection 76-8-306(1) of the obstruction of justice statute nearly verbatim.[73] But it excludes the "would be punishable" language from subsection 76-8-306(2)(a), which the court of appeals relied on in both interpreting the statute and analyzing the case's jury instructions.

¶61 Subsection 76-8-306(1) lists the elements sufficient to satisfy the obstruction of justice statute: (1) the defendant must "alter[], destroy[], conceal[], or remove[] any item or other thing," (2) "with intent to hinder, delay, or prevent, the investigation . . . of any person regarding conduct that constitutes a criminal offense." With this language before it, the jury was effectively asked to determine whether Paule "removed" the shotgun from his apartment with the intent to hinder the investigation into the killing of Friend. The fact that the jury was not instructed on the statutory definition of "conduct that constitutes a criminal offense" from subsection 76-8-306(2)(a) is immaterial to this determination.

¶62 Having been properly instructed on the two elements from subsection 76-8-306(1), the jury was asked to decide whether Paule

---

[73] *See* UTAH CODE § 76-8-306(1)(c) ("An actor commits obstruction of justice if the actor, with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense . . . alters, destroys, conceals, or removes any item or other thing.").

intended to hinder the investigation of "conduct that constitutes a criminal offense."[74] Accordingly, the jury was tasked with determining only that by "remov[ing] any item or other thing" from his apartment, Paule "inten[ded] to hinder, delay, or prevent" the investigation into the fatal shooting of Friend (the fatal shooting being conduct that Paule believed constituted the *actus reus* of a criminal offense).[75] Because killing someone is unquestionably the *actus reus* of a criminal offense, the jury could have reasonably inferred, based on the evidence before it, [76] that Paule chose to remove the shotgun from his apartment with the intent to hinder the investigation into the killing of Friend—an action that would constitute obstruction of justice. The fact that the jury also determined that Paule was justified in defending himself is ultimately irrelevant to this analysis.

¶63 Because the jury could have reasonably interpreted its instructions in a way that returned reconcilable verdicts, the court of appeals' error in straying from the exact language of the jury instructions was harmless. Accordingly, we affirm the court's holding that Paule's verdicts were not legally impossible.

## II. Paule Has Not Shown That His Counsel Was Constitutionally Ineffective

¶64 We granted certiorari to review whether the court of appeals erred in concluding that Paule's counsel was not ineffective in failing to seek a more detailed unanimity instruction. While Paule challenges the court of appeals' decision on that issue, he also challenges the court's decision on another issue: whether his counsel was ineffective in failing to seek a clarifying instruction or a special verdict form with respect to the charge for obstruction of justice.

¶65 Below, we address each of Paule's claims. We hold that (1) Paule's counsel was not ineffective in failing to seek a more detailed unanimity instruction, and (2) because Paule did not raise in his petition for certiorari his claim that his counsel was ineffective in failing to seek a clarifying instruction or a special verdict form, the claim is beyond the scope of our review.

---

[74] *See id.* § 76-8-306(1).

[75] *Id.* § 76-8-306(1)(c).

[76] *See Carrell*, 2018 UT App 21, ¶ 57 ("[A] defendant's intent can be inferred from conduct and attendant circumstances in the light of human behavior and experience." (Cleaned up)).

### A. Paule's Counsel Was Not Ineffective in Failing to Seek a More Detailed Unanimity Instruction

¶66 Paule argues that his trial counsel provided constitutionally ineffective assistance in failing to request an instruction directing that the jury unanimously agree not only about whether Paule was guilty of obstruction of justice but also about the specific obstructive act that he committed. To prevail on this claim, Paule must demonstrate that (1) his counsel's performance was deficient, falling "below an objective standard of reasonableness,"[77] and (2) the deficient performance prejudiced him.[78] Because we determine that Paule has not shown that his counsel's performance was deficient, we decide the issue on the test's first prong and do not address whether the alleged deficient performance prejudiced Paule.[79]

¶67 As Paule accurately observes—and the State does not dispute—although the jury instructions in Paule's case mentioned general principles of jury unanimity, none specified that the jury must unanimously agree about which specific obstructive act he committed.[80] The Utah Constitution's Unanimous Verdict Clause expressly protects a criminal defendant's right to a unanimous verdict.[81] The constitutional "requirement of unanimity is not met if a

---

[77] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[78] *Id.* at 687.

[79] *See, e.g.*, *Menzies v. State*, 2014 UT 40, ¶ 78, 344 P.3d 581, *abrogated on other grounds by McCloud v. State*, 2021 UT 51, 496 P.3d 179 (reasoning that because "[a] satisfactory showing of both parts of the *Strickland* test is required for the defendant to prevail," "it is not necessary . . . to address both components of the inquiry if we determine that a defendant has made an insufficient showing on one" (cleaned up)).

[80] One jury instruction stated, "In all criminal cases, including this case, the unanimous agreement of all jurors is required before a verdict is reached." Another encouraged the jury to "[t]ry to reach unanimous agreement" and instructed that "[b]ecause this is a criminal case, every single juror must agree with the verdict before the defendant can be found 'guilty' or 'not guilty.'" And another instructed the foreperson to "fill in the appropriate blanks" on the verdict form "to reflect the jury's unanimous decision."

[81] *See* UTAH CONST. art. I, § 10 ("In criminal cases the verdict shall be unanimous.").

jury unanimously finds only that a defendant is guilty *of a crime*."[82] Under our "well-established" caselaw,[83] a jury verdict must also be unanimous "as to each count of *each distinct crime charged* by the prosecution and submitted to the jury for decision."[84] For example, "a verdict would not be valid if some jurors found a defendant guilty of robbery committed on December 25, 1990, in Salt Lake City, but other jurors found him guilty of a robbery committed January 15, 1991, in Denver, Colorado," despite "all jurors [finding] him guilty of the elements of the crime of robbery."[85]

¶68 With these principles in mind, Paule asserts that in his case, the jury instructions insufficiently described the jury's constitutional obligation to reach a unanimous verdict, and so his counsel acted deficiently by not requesting a more specific unanimity instruction. For two reasons, we hold that Paule's counsel was not ineffective in failing to seek a more detailed unanimity instruction. First, if counsel had requested a more specific instruction, then the State's options for conviction of obstruction of justice could have expanded. Second, counsel's decision to rely on the State's clear identification of the shotgun evidence as the factual basis for the obstruction charge was supported by controlling caselaw.

1. Counsel Acted Reasonably Because a More Detailed Unanimity Instruction Could Have Hurt Paule's Chances of Acquittal

¶69 Paule argues that the State presented evidence of three separate acts, any of which a reasonable juror could have latched onto to conclude that he committed obstruction of justice. Specifically, he notes that the jury heard evidence about (1) the shotgun being found in the grass below his apartment balcony, (2) the disappearance of his phone, and (3) his travel to California immediately after the shooting occurred.

¶70 Indeed, the jury heard law enforcement officers testify that the shotgun was found in the grass below Paule's balcony, which indicated to the officers that it "had been tossed down to the ground." The jury also heard investigators testify that because Paule "was using Instagram all night as he made his way to San Diego," the

---

[82] *State v. Hummel*, 2017 UT 19, ¶ 26, 393 P.3d 314 (cleaned up).

[83] *Id.* ¶ 30.

[84] *Id.* ¶ 26.

[85] *Id.* ¶ 28 (cleaned up).

investigators did not believe that Paule had lost his phone; rather, they believed he "ditched" it. And the jury heard evidence indicating that, after shooting Friend, Paule ran from his apartment and traveled to California. As Paule sees it, because the jury could have concluded that any of the three potentially obstructive acts amounted to obstruction of justice, his counsel should have insisted on a unanimity instruction that clearly identified the factual basis for the obstruction of justice charge.

¶71 We do not disagree with Paule that the jury heard evidence about multiple acts that a reasonable juror could have believed amounted to obstruction of justice.[86] Nor do we disagree that any potential confusion among the jurors could have been headed off by an instruction that identified the shotgun disposal as the obstructive act. But, properly framed, the issue before us is not whether trial counsel followed best practices; the issue before us is whether counsel's performance was objectively reasonable under the circumstances of Paule's case. When reviewing a claim that a defendant's counsel performed deficiently, the question "is not whether some strategy other than the one that counsel employed looks superior";[87] rather, "[i]f it appears counsel's actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance."[88] Stated differently, counsel's performance can be objectively reasonable despite a failure to employ "the best strategy."[89]

¶72 For example, in *State v. Ray*, we held that Ray's trial counsel was not ineffective in failing to object to an undefined term included in one of the jury instructions.[90] There, the applicable statute provided two ways in which a person could be convicted of forcible sexual

---

[86] We note, however, the State's position that under a natural reading of the statute, Paule could not have been convicted of obstruction for traveling to California, because the words "alter," "destroy," "conceal," and "remove" apply only to physical objects, not to a person's departure from a crime scene. *See* UTAH CODE § 76-8-306(1)(c). As that question has no bearing on our decision, we decline to address the merits of the State's assertion.

[87] *State v. Hunter*, 2021 UT 44, ¶ 95, 496 P.3d 119 (cleaned up).

[88] *State v. Ray*, 2020 UT 12, ¶ 34, 469 P.3d 871.

[89] *Hunter*, 2021 UT 44, ¶ 95.

[90] 2020 UT 12, ¶¶ 25, 46.

abuse: (1) by touching specific areas of another's body or (2) by taking "indecent liberties" with another.[91] The jury instructions did not define the term "indecent liberties,"[92] Ray's counsel did not attempt to correct the omission,[93] and Ray was convicted of forcible sexual abuse.[94]

¶73 On appeal, responding to Ray's claim that his counsel rendered ineffective assistance, we examined the context of his counsel's actions.[95] We noted that at trial, the State focused its attention on the first of the two options described in the statute, the "touching variant," and it did not focus its attention on the second option, the "indecent liberties variant."[96] Within that context, we held that Ray had not "overcome the 'strong presumption' that his counsel exercised reasonable professional judgment"[97] because his "counsel could have reasonably concluded that clarifying indecent liberties would not help clear Ray and could instead broaden the State's arguments against him."[98]

¶74 So too, here, we conclude that in the context of Paule's trial, his counsel could have reasonably concluded that seeking a more specific unanimity instruction could have broadened the State's arguments against Paule to his detriment. Over the course of Paule's trial, the State clearly identified the obstruction charge as being founded only on the shotgun evidence. In its opening statement, the State informed the jury that the second charge against Paule was "obstruction of justice, when, after he shot [Friend], he took that shotgun, threw it off the balcony in order to hinder, delay, or prevent the investigation." Later at trial, in response to Paule's motion for a directed verdict on the obstruction charge, the State again framed the charge as being centered on the shotgun evidence. It maintained that based on the shotgun evidence, there was "sufficient circumstantial

---

[91] *Id.* ¶¶ 25–26.

[92] *Id.* ¶ 19.

[93] *Id.*

[94] *Id.* ¶ 1.

[95] *Id.* ¶ 32 (explaining our decision to view Ray's counsel's decision not to object "in context").

[96] *Id.* ¶¶ 37, 39.

[97] *Id.* ¶ 43 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[98] *Id.* ¶ 42.

evidence with regards to obstruction of justice." And once more, in its closing argument, the State reiterated that

> Count 2 is obstruction of justice. That is when he threw the gun over the balcony. . . . Now, again, he threw that shotgun over and only his prints are on that. That would be consistent with him shooting the shot, going and throwing it over the balcony and then coming out a short time later to get away.

¶75 Moreover, we agree with the court of appeals' observation that "[a]t no point during trial did the prosecutor ever argue that the obstruction count was for any act other than throwing the shotgun off the balcony."[99] Evidence of Paule's lost phone and his travel to California was discussed only in connection with the murder charge—not the obstruction charge. And because the State never discussed any acts related to Paule's phone or his travel to California in the context of the obstruction charge, its position remained clear: the obstruction charge rested only on the evidence suggesting that Paule had disposed of the shotgun.[100]

¶76 Viewed in that context, Paule's counsel could have reasoned that the State had elected to put all its obstruction eggs in the shotgun basket. And if, in response to a request for a unanimity instruction, the State introduced to the jury the question of whether it could, alternatively, convict Paule based on the phone evidence or the evidence of his travel to California, then the State's options would

---

[99] *State v. Paule*, 2021 UT App 120, ¶ 45, 502 P.3d 1217.

[100] In his attempt to show that the State did not clearly identify the obstruction charge as being founded only on the shotgun evidence, Paule references statements the State made after trial. On this point, we again agree with the court of appeals:

> [A]ny comments the State made after the jury had been discharged—for instance, at sentencing, or in defending against Paule's motion to arrest judgment—cannot have had any effect on the jury's perception of the factual basis for the obstruction charge. . . . [W]e can readily conclude that any comment made days or weeks after the jury's discharge cannot possibly have countermanded or diluted, in the jury's mind, the reach of the State's otherwise-clear guidance to the jury regarding the scope of the obstruction charge.

*Id.* ¶ 47.

have broadened, and its case for obstruction would have been strengthened. Therefore, Paule's counsel was reasonable in not requesting a more detailed unanimity instruction.

2. Counsel Was Reasonable in Declining to Press for a More Detailed Unanimity Instruction Because That Decision Was Supported by Controlling Caselaw

¶77 Paule bristles at the State's assertion—and the court of appeals' determination—that his counsel could have reasonably concluded that the lack of a unanimity instruction was effectively remedied by the State's election to present the shotgun evidence as the basis for the obstruction of justice charge. In his view, a proper jury instruction is imperative in protecting a criminal defendant's right to jury unanimity. He reasons that it is "completely inappropriate" to entrust the State—opposing counsel—with the obligation of protecting a criminal defendant's constitutional right to a unanimous verdict because it is the court's role to instruct the jury, while it is the State's role to present evidence and persuade the jury of the defendant's guilt.

¶78 But again, properly framed, the issue before us is not whether an alleged jury unanimity problem may be resolved by prosecutorial election; the issue before us is whether counsel's performance was objectively reasonable under the circumstances of Paule's case. We agree with the State that because courts in Utah and elsewhere have determined that a unanimity problem can be remedied by prosecutorial election, Paule's counsel was objectively reasonable in traveling that "well-trodden path" rather than potentially expanding the State's arguments against Paule.

¶79 Our court of appeals was presented with a jury unanimity question in *State v. Alires*.[101] There, the State charged Alires with six counts of aggravated sexual abuse of a child—two for conduct toward his daughter and four for conduct toward his daughter's friend.[102] The

---

[101] 2019 UT App 206, ¶ 15, 455 P.3d 636. In its briefing in Paule's case, the State reminds us that in a pending case before this court, the State requests we reject or limit *Alires*. In Paule's case, however, the State "assume[s]—without conceding—that *Alires* was correctly decided." We adopt a similar approach. Because neither party argues here that *Alires* was incorrectly decided, we leave that question open for later determination.

[102] *Id.* ¶ 1.

daughter's friend testified at trial that Alires had touched her unlawfully at least six times and that he had touched his daughter unlawfully twice.[103] The State failed to specify which touching supported each charge,[104] Alires's counsel did not request a clarifying unanimity instruction,[105] and Alires was convicted on two of the six counts.[106]

¶80 Alires argued to the court of appeals that his counsel was ineffective in failing to request an instruction informing the jury that it had to unanimously agree on which criminal act supported each conviction.[107] The court agreed. It concluded that "[o]nce the State failed to elect which act supported each charge, the jury should have been instructed to agree on a specific criminal act for each charge in order to convict."[108] In reaching that conclusion, the court approvingly cited two cases from outside Utah.[109] In the first, the Supreme Court of Kansas held that to rectify a unanimity problem, "either the State must have informed the jury which act to rely upon for each charge during its deliberations or the district court must have instructed the jury to agree on the specific criminal act for each charge in order to convict."[110] In the second, the Supreme Court of Washington noted that "[t]o ensure jury unanimity in multiple acts cases," either the State is required to "elect the particular criminal act upon which it will rely for conviction," or "the trial court [must] instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt."[111]

¶81 The court's conclusion in *Alires*—that "[o]nce the State failed to elect which act supported each charge, the jury should have been instructed to agree on a specific criminal act for each charge in order

---

[103] *Id.* ¶ 22.

[104] *Id.*

[105] *Id.* ¶ 23.

[106] *Id.* ¶ 1.

[107] *Id.* ¶ 15.

[108] *Id.* ¶ 22.

[109] *Id.* ¶ 43.

[110] *State v. Santos-Vega*, 321 P.3d 1, 18 (Kan. 2014).

[111] *State v. Vander Houwen*, 177 P.3d 93, 99 (Wash. 2008) (en banc).

to convict"[112]—implied that if the State *had* elected which act supported each charge, then a jury unanimity instruction may not have been necessary. Paule brushes this implication aside as being *dicta* because, in *Alires,* the State *had not* elected which act supported each charge. But, regardless of whether the implication was *dicta,* our court of appeals has since expressly affirmed what *Alires* implied, thus further indicating the reasonableness of counsel's actions in Paule's case.[113] In *State v. Garcia-Lorenzo,* the court of appeals noted that "jury unanimity problems can sometimes be alleviated if the State carefully identifies for the jury, in closing argument or elsewhere, which act supported each charge."[114] And in *State v. Mottaghian,* the court of appeals observed that the alleged unanimity problem in the case "could have been alleviated . . . if the State had identified for the jury—in closing argument, for instance—which act supported each charge."[115]

¶82 So our court of appeals has repeatedly conveyed—both impliedly and expressly—that a jury unanimity problem can be avoided if the State identifies for the jury which act supports each charge. Here, the question is whether Paule's counsel's decision to rely on the State's clear identification of the obstruction charge as being founded on the shotgun evidence—instead of proposing a more specific unanimity instruction—was reasonable. Given that the decision was supported by controlling caselaw, we cannot say it was unreasonable. Accordingly, Paule's counsel did not perform deficiently.

¶83 In sum, because the State's options for conviction could have increased if Paule's counsel had requested a more specific unanimity instruction, and because Paule's counsel's decision to rely on the State's clear election was supported by controlling caselaw, we

---

[112] *Alires,* 2019 UT App 206, ¶ 22.

[113] We note that the following two cases were decided after Paule's trial. They nonetheless support our conclusion in that they confirmed the court of appeals' implication that if the State had elected an act to support each charge, specific unanimity instructions would not be required.

[114] 2022 UT App 101, ¶ 39, 517 P.3d 424 (quoting *Alires,* 2019 UT App 206, ¶ 22), *cert. granted,* 525 P.3d 1263 (Utah 2022).

[115] 2022 UT App 8, ¶ 58, 504 P.3d 773 (quoting *Alires,* 2019 UT App 206, ¶ 22), *cert. denied,* 525 P.3d 1256 (Utah 2022).

conclude that Paule has not "overcome the 'strong presumption' that his counsel exercised reasonable professional judgment,"[116] and we hold that his counsel was not ineffective in failing to seek a more detailed unanimity instruction.

*B. Because Paule's Additional Ineffective Assistance of Counsel Claim Was Not Included in His Petition for Certiorari, We Decline to Address It on the Merits*

¶84 In addition to the claim that his counsel was ineffective in failing to request a more detailed unanimity instruction, Paule claims that his counsel was ineffective in failing to rectify deficiencies in the elements instruction for the obstruction charge. This second claim goes beyond Paule's ineffective assistance of counsel claim based on the allegedly deficient unanimity instruction because a clearer unanimity jury instruction would not have cured the alleged problem with the elements instruction. Instead, to cure the alleged problem with the elements instruction for the obstruction charge, Paule asserts that reasonable counsel would have asked for either (1) an elements instruction informing the jury that the obstruction charge was based on Paule's intent to obstruct the investigation of murder—not reckless endangerment or assault—or (2) a special verdict form permitting the jury to decide which "conduct that constitutes a crime" it believed Paule intended to obstruct—murder, reckless endangerment, or assault.

¶85 Paule made this argument—which he characterized as being "separate and distinct" from his unanimity argument—to the court of appeals. He argued that because the elements instruction for the obstruction charge did not direct the jurors "to inform the court which *conduct that constitutes a criminal offense* they determined . . . Paule acted to obstruct" the investigation into, his counsel was ineffective in not objecting to the deficiency. The court of appeals rejected this argument in a footnote, describing two grounds on which its decision was based. First, "to the extent that Paule's argument intend[ed] to incorporate" his statutory interpretation argument, the court rejected his ineffective assistance of counsel claim for the same reasons it rejected the statutory interpretation claim.[117] Second and

---

[116] *Ray*, 2020 UT 12, ¶ 43 (quoting *Strickland*, 466 U.S. at 689).

[117] *Paule*, 2021 UT App 120, ¶ 36 n.3.

alternatively, the court determined the argument failed because Paule was not prejudiced by his counsel's alleged deficient performance.[118]

¶86 Although the court of appeals ruled on this claim, Paule's petition for writ of certiorari did not include a challenge to that ruling. In his petition, Paule sought review of two issues: (1) whether the court of appeals erred in its interpretation of the obstruction of justice statute or in the application of the legally impossible verdict doctrine, and (2) whether the court of appeals erred in concluding that a jury is adequately instructed about the unanimity requirement as long as the prosecutor's opening or closing arguments identify a theory supporting its case. And after reviewing Paule's petition, we granted certiorari on two related but narrower issues: (1) whether the court of appeals erred in concluding Paule's conviction for obstruction of justice was not legally inconsistent with his acquittal on other charges, and (2) whether the court of appeals erred in concluding Paule could not demonstrate that his counsel was ineffective in failing to seek a more detailed unanimity instruction.

¶87 On certiorari review, we consider "[o]nly the questions set forth in the petition or fairly included therein."[119] Because our review is circumscribed in this way,[120] we are generally "disinclined to review" an issue not raised in a petition for writ of certiorari.[121] Here, Paule did not include in his petition a challenge to the court of appeals' ruling that his counsel was not ineffective in failing to seek a clarifying instruction or a special verdict form with respect to the elements instruction for the obstruction charge. And we cannot say that the question is fairly included in his petition. Accordingly, we decline to consider the merits of the parties' arguments on the question.

## Conclusion

¶88 Under the obstruction of justice statute and our caselaw, Paule's conviction was legally consistent. Obstruction of justice does not require the State to prove a separate crime. It is legally possible for a jury to convict a defendant of obstruction of justice and acquit the defendant on all other charged crimes.

---

[118] *Id.*

[119] UTAH R. APP. P. 49(a)(4).

[120] *See Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 856 (Utah 1998).

[121] *State v. Shipp*, 2005 UT 35, ¶ 18, 116 P.3d 317.

¶89 Paule has not shown that his counsel was ineffective. His counsel acted reasonably by not requesting a more specific unanimity instruction because the decision could have been intended to further a reasonable strategy and was supported by controlling caselaw. We do not address the merits of Paule's additional ineffective assistance of counsel claim, as it is beyond the scope of our certiorari review.

¶90 We affirm.

———————